IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA,
Plaintiff,

v.

EXELON MYSTIC, LLC, a Delaware limited liability company; and
Defendant.

Civil Action No. 04 10213 PBS

RECEIPT #
AMOUNT $ N/A
SUMMONS ISSUED N/A
LOCAL RULE 4.1
WAIVER FORM
MCF ISSUED
BY DPTY. CLK. FOM
DATE 1-29-04

MAGISTRATE JUDGE Alexander

COMPLAINT

The United States of America, by authority of the Attorney General of the United States and at the request of the Administrator of the United States Environmental Protection Agency ("EPA"), brings this action against the defendant, Exelon Mystic, LLC ("Exelon Mystic" or "Defendant"), and alleges as follows:

INTRODUCTION

1. This is a civil action for penalties and injunctive relief for violations by Defendant of Sections 113, 114, 412 and 414 of the Clean Air Act, as amended ( "Act"), 42 U.S.C. §§ 7413, 7414, 7651k, and 7651m, and the Act's implementing regulations, including requirements established in the Commonwealth of Massachusetts' State Implementation Plan ("Massachusetts SIP"), for at least 6,000 violations of visible air pollutant limits ("opacity limits") and associated monitoring and reporting requirements at Defendant's Mystic Station Power Plant in Everett, Massachusetts, ("Mystic Station" or "Plant").

2. On June 1, 2001, EPA issued to Defendant a Notice of Violation and Reporting Requirement ("NOV") stating, among other things, that Mystic Station had violated its

Massachusetts SIP opacity limits on at least 291 occasions from July through December 2000, and that Mystic Station had violated various opacity monitoring and reporting requirements.

3. On March 4, 2002, EPA issued to Defendant a Compliance Order and Reporting Requirement ("Compliance Order" or "Order") stating that Mystic Station was continuing to violate its opacity limits and requiring, among other things, that Defendant take various steps to address its continuing opacity noncompliance. By its terms, this Compliance Order expired in March 2003.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over the subject matter of this action pursuant to Section 113(b) of the Act, as amended, 42 U.S.C. § 7413(b), and 28 U.S.C. §§ 1331, 1345 and 1355.

5. Venue is proper in this district pursuant to 28 U.S.C. §§ 1391 and 1395, and Section 113(b) of the CAA, 42 U.S.C. § 7413(b), because Defendant is doing business in this district and because the violation alleged herein occurred in this judicial district.

6. Defendant is a Delaware limited liability company doing business in Massachusetts.

7. Mystic Station is an electric power generation facility located in Everett, Massachusetts.

8. Authority to bring this action is vested in the United States Department of Justice pursuant to Section 305 of the Act, 42 U.S.C. § 7605.

9. Pursuant to Section 113(a)(1) of the Act, 42 U.S.C. § 7413(a)(1), EPA has provided prior notice of Mystic Station's violations of the Massachusetts SIP to Defendant and to the Massachusetts DEP.

10. Pursuant to Section 113(b) of the Act, 42 U.S.C. § 7413(b), notice of the commencement of this civil judicial action has been given to the Massachusetts DEP.

DEFENDANT

11. Exelon Mystic is a Delaware limited liability company, and is a "person" as that term is defined in Section 302(e) of the Act, 42 U.S.C. § 7602(e).

12. Since May of 1998, the Defendant has owned and operated Mystic Station. In November of 2002, the Defendant changed its name from Sithe Mystic LLC to Exelon Mystic.

13. Exelon Mystic is a wholly owned subsidiary of Exelon Boston Generating, LLC, which in turn is a wholly owned subsidiary of Exelon New England Holdings, LLC. Prior to November 26, 2002, Exelon Boston Generating, LLC, and Exelon New England Holdings, LLC, were known as Sithe Boston Generating LLC and Sithe New England Holdings, LLC, respectively.

14. On November 1, 2002, Exelon Generation Company, LLC ("Exelon Generation") purchased, inter alia, 100% of Sithe New England Holdings LLC and all of its subsidiaries, including Sithe Mystic LLC. In November of 2002, Sithe New England Holdings LLC and its subsidiaries, including Sithe Boston Generating LLC and Sithe Mystic LLC, each changed their names by, inter alia, substituting "Exelon" for "Sithe."

STATUTORY FRAMEWORK

15. The Clean Air Act is designed to protect and enhance the quality of the Nation's air so as to promote the public health and welfare and the productive capacity of its population. Section 101(b)(1) of the Act, 42 U.S.C. § 7401(b)(1).

16. Section 109 of the Act, 42 U.S.C. § 7409, requires EPA to promulgate regulations establishing primary and secondary national ambient air quality standards ("NAAQS") for certain air pollutants. Under Section 110(a) of the Act, 42 U.S.C. § 7410(a), each state is required to adopt and submit to EPA for approval an implementation plan which provides for the attainment and maintenance of each such NAAQS.

17. Pursuant to Section 302(q) of the Act, 42 U.S.C. § 7602(q), an applicable implementation plan is the implementation plan, or most recent revision thereof, which has been approved by EPA pursuant to Section 110 of the Act, 42 U.S.C. § 7410. Such an applicable implementation plan is also referred to as a state implementation plan ("SIP").

18. The Commonwealth of Massachusetts has adopted a SIP approved by EPA pursuant to Section 110 of the Act, 42 U.S.C. § 7410. The Massachusetts SIP included federally-approved portions of the Massachusetts Air Pollution Control Regulations at 310 Code of Massachusetts Regulations ("CMR") 7.00 et seq.

19. Sections 113(a) and (b) of the Act, 42 U.S.C. §§ 7413(a) and (b) provide, inter alia, that any person who violates any SIP requirement or permit, or who violates any requirements of the Act (excluding Subchapter II, pertaining to mobile sources) or any regulations or orders issued under the Act, may be subject to a federal civil judicial action for a permanent or temporary injunction and a civil penalty of up to $25,000 per day for each violation. Pursuant to the Debt Collection Improvement Act of 1996 ("DCIA"), and the DCIA's implementing regulations set forth at 40 C.F.R. Part 19, a civil penalty of up to $27,500 per day for each such violation occurring on or after January 31, 1997, may be assessed.

20. 40 C.F.R. § 52.23 provides, inter alia, that any failure by a person to comply with any provision of 40 C.F.R. Part 52, or with any approved regulatory provision of a SIP, shall render such person in violation of the applicable SIP, and subject to enforcement action pursuant to Section 113 of the Act, 42 U.S.C. § 7413.

21. Section 113(a)(1) of the Act, 42 U.S.C. § 7413(a)(1), provides that if EPA finds that any person is in violation of a SIP requirement, EPA shall notify the violator and the relevant State of such finding. After 30 days following the issuance of this notice, EPA or its authorized representative may bring a civil judicial enforcement action as described in Paragraph 19 above. For non-SIP violations, no such advance notice is required before a judicial enforcement action may be brought.

FIRST CLAIM FOR RELIEF (OPACITY VIOLATIONS)

22. The allegations of Paragraphs 1 through 21, above, are realleged and fully incorporated herein by reference.

23. The Massachusetts SIP has included, at all relevant times, a federally-approved and federally-enforceable version of 310 CMR Section 7.06 ("Regulation 7.06") that regulates visible air pollutant emissions from sources such as Mystic Station by limiting their emissions' opacity.

24. Opacity is a measure of smoke density – 0% opacity a completely clear plume; 100% opacity is a completely black (or other colored) plume that blocks out all light behind it.

25. The federally-approved SIP version of Regulation 7.06 provides in part as follows:

REGULATION 7.06. U Visible Emissions

6.1 From Stationary Sources Other Than Incinerators

> 6.1.a No person shall cause, suffer, allow, or permit the emission of smoke which has a shade, density, or appearance equal to or greater than No. 1 of the Chart for a period, or aggregate period of time in excess of six minutes during any one hour, provided that at no time during the said six minutes shall the shade, density, or appearance be equal to or greater than No. 2 of the Chart.

26. Regulation 7.06 uses "No. 1 of the Chart" and "No. 2 of the Chart" in order to define the opacity of a source's visible emissions. The "Chart" refers to the Ringelmann Scale for grading smoke density. Nos. 1 and 2 on the Ringelmann Scale correspond to 20% and 40% opacity, respectively.

27. Accordingly, the Massachusetts SIP version of Regulation 7.06.1.a effectively prohibits sources such as Mystic Station from causing visible smoke emissions with an opacity greater than or equal to 20% for more than six minutes per hour, and further prohibits emissions of 40% opacity or greater at any time.

28. At all relevant times, Mystic Station has included four electricity- generating units, known as Units 4, 5, 6 and 7, each with its own associated smokestack, from which Defendant has emitted and continues to emit pollutants, including various sorts of particulate matter.

29. At all relevant times, Mystic Station has been subject to the Massachusetts SIP version of Regulation 7.06.

30. Based on Mystic Station's own opacity compliance records and reports, and on visible emission observations made by EPA inspectors, Defendant, from June 1998 through November 2003, has violated its Massachusetts SIP opacity limits at Mystic Station on at least 6,000 occasions.

31. Accordingly, Defendant has violated, and continues to violate, the Massachusetts SIP version of Regulation 7.06 at Mystic Station.

SECOND CLAIM FOR RELIEF (MONITORING AND REPORTING)

32. The allegations of Paragraphs 1 through 31, above, are realleged and fully incorporated herein by reference.

33. The Massachusetts SIP has included, at all relevant times, a federally-approved and federally-enforceable version of 310 CMR Sections 7.14(2) and 7.14(3), which together require certain emission sources to comply with the minimum requirements for continuous emission monitoring, recording and reporting set out in 40 C.F.R. Part 51, Appendix P, as amended ("Appendix P" or "App. B"). Appendix P includes minimum requirements for monitoring, recording and reporting of opacity from fossil fuel-fired steam generators such as Mystic Station.

34. The federally-approved SIP version of Regulation 7.14(2) and 7.14(3) provide as follows:

> (2) Any person who owns or operates an emission source as described in 40 CFR, Part, 51, Appendix P, as amended, shall comply with the minimum requirements for continuous emission monitoring, recording, and reporting as set forth therein for opacity, nitrogen oxides emissions, sulfur dioxide emissions, and oxygen or carbon dioxide.
>
> (3) The monitoring and recording required in 310 CMR 7.14(2) shall begin within 18 months of the effective date of these regulations.

35. Appendix P provides, among other things, that all continuous monitoring systems must be installed such that "representative readings of emissions or process parameters. . . from the affected facility are obtained." App. P, § 3.5. Quarterly excess emission reports are also required; these reports must include the magnitude in actual percent opacity of all one-minute

averages (or other established period) of opacity greater than the standard for each hour of facility operation. App. P, § 4.2.

36. Appendix P further provides that certain fossil fuel-fired steam generators must install, calibrate, maintain and operate continuous opacity monitoring systems in compliance with Appendix P and with Performance Specification 1 in Appendix B of 40 C.F.R. Part 60 ("Performance Specification 1" or "PS-1"). App. B, §§ 1.1.1, 2.1, and 3.1.1.

37. Performance Specification 1 requires, among other things, installation of the continuous emission monitoring system at a location where the opacity measurements are representative of the total emissions from the affected facility. PS-1, § 4. In addition, monitors must be located at a sufficient distance from any bend or disturbance in the stack to assure a well-mixed stream. PS-1, § 4.2.

38. At all relevant times, Mystic Station has been subject to the federally-approved Massachusetts SIP version of Regulation 7.14(2) and 7.14(3), and to the requirements of Appendix B and Performance Specification 1 referenced therein.

39. Defendant violated the Massachusetts SIP version of Regulation 7.14(2) and 7.14(3) by failing to report to the Massachusetts DEP all instances (apart from any exempted periods) where the Plant's opacity exceeded its opacity limits.

40. Defendant further violated the Massachusetts SIP version of Regulation 7.14(2) and 7.14(3) by failing to install its continuous opacity monitoring system such that representative opacity readings were obtained, and by otherwise failing to properly monitor and record its opacity.

THIRD CLAIM FOR RELIEF (ACID RAIN PROVISIONS)

41. The allegations of Paragraphs 1 through 40, above, are realleged and fully incorporated herein by reference.

42. Apart from the above-described Massachusetts SIP requirements, Mystic Station's four electricity-generating units have also been subject, at all relevant times, to the Acid Deposition Control provisions ("Acid Rain Provisions") of the Act, 42 U.S.C. §§ 7651 - 7651(o), and to these provisions' federal implementing regulations set out at 40 C.F.R. Part 75 ("Acid Rain Regulations").

43. The Acid Rain Provisions require, among other things, that owners and operators of subject sources install and operate continuous emission monitoring systems for opacity on each affected unit, and prohibit source operation in noncompliance with these monitoring provisions and with the Acid Rain Regulations. Sections 412(a) and (e), and 414 of the Act, 42 U.S.C. §§ 7651k(a) and (e), and 7651m.

44. The Acid Rain Regulations at 40 C.F.R. § 75.10(a)(4) require, among other things, that the owner or operator of an affected unit must "install, certify, operate and maintain, in accordance with all the requirements of this part, a continuous opacity monitoring system with an automated data acquisition and handling system." Each such continuous opacity monitoring system for coal-fired and oil-fired units "shall meet the design installation, equipment, and performance specifications" in Performance Specification 1.

45. Defendant violated the Acid Rain Provisions and its implementing Acid Rain Regulations by failing to install its continuous opacity monitoring system such that representative

opacity readings are obtained, by otherwise failing to properly monitor and record its emissions, and by failing to accurately report its opacity exceedances.

FOURTH CLAIM FOR RELIEF (COMPLIANCE ORDER VIOLATION)

46. The allegations of Paragraphs 1 through 21, above, are realleged and fully incorporated herein by reference.

47. EPA's Compliance Order, described in Paragraph 3 above, was issued to Defendant on March 4, 2002 pursuant to Sections 113 and 114 of the Act, 42 U.S.C. §§ 7413 and 7414, and became effective on March 14, 2002.

48. The Compliance Order required, among other things, that Defendant conduct a testing and parametric monitoring program at Mystic Station Unit 7 ("Unit 7 Testing Program"), and, unless otherwise directed in writing by EPA, complete the testing/monitoring program by May 31, 2002, and provide a written report of the program's results ("Final Report") to EPA by no later than June 15, 2002. Order, ¶¶ 31, 32.

49. In May 2002, and again in June 2002, Defendant proposed, and EPA subsequently agreed to writing, to extend the deadline for the Final Report, with the ultimate revised deadline being August 15, 2002.

50. Defendant failed to supply the Final Report on August 15, 2002. Defendant ultimately supplied the Final Report on October 17, 2002.

51. Accordingly, Defendant violated the Compliance Order, and Sections 113 and 114 of the Act, 42 U.S.C. §§ 7413 and 7414, by failing to timely submit the Final Report.

REQUEST FOR RELIEF

Section 113(b) of the Act, 42 U.S.C. § 7413(b), authorizes the Administrator of EPA to bring a civil action for injunctive relief and the assessment of a civil penalty of not more than $25,000 per day for each violation (or not more than $27,500 per day for each violation occurring after January 30, 1997, pursuant to the DCIA and its implementing regulations at 40 C.F.R. Part 19) of, inter alia, a SIP requirement or permit, or any requirement of the Act (excluding Subchapter II) or its implementing regulations, or any requirement of an order issued under the Act.

WHEREFORE, Plaintiff United States of America respectfully requests from this Court the following relief:

1. An order that Defendants pay a civil penalty in an amount of up to $25,000 ($27,500 for violations occurring after January 30, 1997) per day for each violation by Defendant of any applicable requirement of the Act, any regulations or orders issued under the Act, or any requirements of the Massachusetts SIP;

2. Such injunctive relief to which Plaintiff may be entitled; and

3. Such other relief, including the costs of this action, which this Court deems appropriate.

Respectfully submitted,

Dated: 1/8/04

THOMAS L. SANSONETTI
Assistant Attorney General
Envir. and Natural Resources Div.
United States Department of Justice

Dated: 1/15/04

ELISE S. FELDMAN, B.B.O. #563187
Trial Attorney
PETER M. FLYNN
Senior Attorney
Environmental Enforcement Section
Envir. and Natural Resources Div.
United States Department of Justice

MICHAEL J. SULLIVAN
United States Attorney

GEORGE B. HENDERSON, II
Assistant U.S. Attorney
John Joseph Moakley U.S. Courthouse
1 Courthouse Way, Suite 9200
Boston, MA 02210

OF COUNSEL:

STEVEN J. VIGGIANI
Senior Enforcement Counsel
U.S. EPA, Region I
One Congress Street, Suite 1100 (SEL)
Boston, MA 02114-2023