53.    Any non-material modifications of this Consent Decree must be agreed to by the Parties and set out in writing.

## XVI.  PUBLIC PARTICIPATION

54.    The Consent Decree is lodged with the Court subject to the requirements of 28 C.F.R. § 50.7, which provides for publication of a notice of this proposed Consent Decree in the Federal Register and an opportunity for the public to comment.  The public has thirty (30) days from the date of publication in the Federal Register to comment on the settlement.  All written comments received, along with any responses to them, shall be provided to the Court prior to entry.  The United States reserves the right to withdraw or withhold its consent to entry if the comments regarding the Consent Decree disclose facts or considerations which indicate that the Consent Decree is inappropriate, improper or inadequate.  Exelon Mystic consents to the entry of this Consent Decree without further notice,  proceedings or consent.

## XVII.  SIGNATORIES/SERVICE

55.    Each party certifies that at least one of their undersigned representatives is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind such party to this document.

56.    This Consent Decree may be signed in counterparts, and its validity shall not be challenged on that basis.

57.    Defendant agrees not to oppose entry of this Consent Decree by the Court or to challenge any provision of the Decree, unless the United States has notified Defendant in writing that it no longer supports entry of the Decree.

58.    Defendant agrees to accept service of process by mail with respect to all matters arising under or relating to this Consent Decree and to waive the formal service requirements set forth in Rule 4 of the Federal Rules of Civil Procedure and any applicable local rules of this Court including, but not limited to, service of a summons.

## XVIII.  INTEGRATION/APPENDICES

59.    This Consent Decree and its Appendices constitute the final, complete, and exclusive agreement and understanding among the Parties with respect to the settlement embodied in the Decree and supersede all prior agreements and understandings, whether oral or written, concerning the settlement embodied herein.  Other than the Appendices, which are attached to and incorporated in this Decree, and any documents that are subsequently submitted and approved pursuant to this Decree, no other document, nor any representation, inducement, agreement, understanding, or promise, constitutes any part of this Decree or the settlement it represents, nor shall it be used in construing the terms of this Decree.

## XIX.  FINAL JUDGMENT

60.    Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment of the Court as to the United States and Defendant.

## XX.  APPENDICES

61.    The following appendices are attached to and incorporated into this Consent Decree:

"Appendix I" is the General Provisions for Mystic SEPs

"Appendix II" is the School Bus Retrofit SEP;

"Appendix III" is the Commuter Rail Retrofit SEP;

"Appendix IV" is the Dam Bikepath SEP;

"Appendix V" is the Mill Creek SEP; and

"Appendix VI" is the Malden River Study SEP.

JUDGMENT IS HEREBY ENTERED IN ACCORDANCE WITH THE FOREGOING
CONSENT DECREE THIS _____ DAY OF _____, 2004.

_____
UNITED STATES DISTRICT JUDGE

UNITED STATES v. EXELON MYSTIC, LLC CONSENT DECREE

FOR PLAINTIFF THE UNITED STATES OF AMERICA:


Thomas L. Sansonetti
Assistant Attorney General
Environment and Natural Resources Division
United States Department of Justice

1/8/04
DATE


Elise S. Feldman
Trial Attorney B.B.O. 563187
Peter M. Flynn
Senior Attorney
Environmental Enforcement Section
Environment & Natural Resources Division
United States Department of Justice
P.O. Box 7611
Washington, D.C. 20044

1/15/04
DATE


Michael J. Sullivan
United States Attorney
District of Massachusetts


George Bunker Henderson, II
Assistant United States Attorney
District of Massachusetts
1 Courthouse Way
Boston, Massachusetts 02210

- 23 -

UNITED STATES v. EXELON MYSTIC, LLC CONSENT DECREE

FOR THE UNITED STATES ENVIRONMENTAL PROTECTION AGENCY:


Robert W. Varney
Regional Administrator
U.S. Environmental Protection Agency
 Region I -- New England
One Congress Street (Mailcode RAA)
Boston, Massachusetts 02114

DATE 12/23/03


Stephen S. Perkins
Director
Office of Environmental Stewardship
U.S. Environmental Protection Agency
 Region I -- New England
One Congress Street (Mailcode SAA)
Boston, Massachusetts 02114

DATE 12/22/03


Steven J. Viggiani
Senior Enforcement Counsel
Office of Environmental Stewardship
U.S. Environmental Protection Agency
 Region I -- New England
One Congress Street (Mailcode SEL)
Boston, Massachusetts 02114

DATE 12/22/03

UNITED STATES v. EXELON MYSTIC, LLC CONSENT DECREE

FOR THE UNITED STATES ENVIRONMENTAL PROTECTION AGENCY:

John Peter Suarez
Assistant Administrator for
Enforcement and Compliance Assurance
U.S. Environmental Protection Agency
1200 Pennsylvania Avenue, NW (Mailcode 2201A)
Washington, D.C. 20460

DATE    1/13/04

UNITED STATES v. EXELON MYSTIC, LLC CONSENT DECREE

FOR DEFENDANT EXELON MYSTIC, LLC:

Mark A. Schiavoni
Vice President
Exelon Mystic, LLC

12/18/03
DATE

- 26 -

## APPENDIX I – GENERAL PROVISIONS FOR MYSTIC SEPS

1.    Exelon Mystic shall perform and satisfactorily complete five supplemental environmental projects ("SEPs"). These SEPs – the School Bus Retrofit SEP, the Commuter Rail Retrofit SEP, the Dam Bikepath SEP, the Mill Creek SEP, and the Malden River Study SEP – are described in detail in Appendices II through VI below.

2.    Exelon Mystic's "performance and satisfactory completion" of each SEP shall mean that Exelon Mystic shall perform or ensure the performance of the SEP in accordance with the terms and schedules set out in the Appendices below, and shall spend not less than the funding amounts set out therein. In so doing, Exelon Mystic may employ or work with contractors, consultants, state and local authorities, or other entities, as appropriate.

3.    As part of its SEP performance, Exelon Mystic shall spend funds on the SEPs as specified in the expenditure schedules set out in Appendices II through VI below. Unless otherwise provided below, if Exelon Mystic does not spend the full amount of funding designated for a SEP's implementation by a specified expenditure date, Exelon Mystic shall, by no later than the expenditure date, (a) establish an interest-bearing escrow account acceptable to EPA, and (b) deposit the unexpended funds in the account. Such deposited funds and any accrued interest shall be spent as soon as practicable on the subsequent implementation of the SEPs, or as provided in Paragraphs 4 and 5 below.

4.    If a force majeure event prevents Exelon Mystic from performing and satisfactorily completing a SEP without expending all of the funds designated for the SEP's implementation in Appendices II through VI below, Exelon Mystic shall so notify EPA in accordance with Section IX above. Upon EPA's agreement that the SEP cannot be satisfactorily completed, Exelon Mystic shall halt work on the SEP, compute the amount of any funds designated for the SEP that have not been spent, and direct, with EPA's approval, such funds to another of the SEPs described in this Consent Decree.

- 27 -

5.    If Exelon Mystic should perform and satisfactorily complete a SEP without expending all of the funds designated for the SEP's implementation in Appendices II through VI, Exelon Mystic shall so notify EPA in the SEP Completion Report (required by Paragraph 7 below) and state the amount of remaining unexpended funds. Upon EPA's agreement that the SEP has been satisfactorily completed, Exelon Mystic shall direct, with EPA's approval, such funds to another of the SEPs described in this Consent Decree.

6.    No later than September 15, 2004, Exelon Mystic shall submit an Interim SEPs Report to EPA. The Interim SEPs Report shall contain

(a)    a narrative description of the activities undertaken on each SEP to date;

(b)    an itemization, with copies of supporting documentation, of the costs expended on each SEP (including the expenditure dates) and/or of the deposits made to any escrow account established for the SEP; and

(c)    an explanation of any difficulties or delays in the implementation of the SEPs.

Exelon shall continue to submit  Interim SEPs Reports to EPA no later than by March 15th and September 15th of each year until all SEPs are certified complete or September 15, 2008, whichever is later.

7.    Within sixty (60) days after the completion of each SEP, Exelon Mystic shall submit a separate SEP Completion Report to EPA. The SEP Completion Reports shall contain the following information:

(a)    a description of the SEP as implemented, including the dates during which the project was implemented:

(b)    itemized costs, documented by copies of purchase orders and receipts or canceled checks;

(c)    a certification of completion stating that the SEP has been performed and satisfactorily completed pursuant to the provisions of this Consent Decree; and

- 28 -

(d)  a description of the environmental and public health benefits resulting from implementation of the SEP.

To satisfy Paragraph 7(d) above, Exelon Mystic is not required to employ consultants or other agents solely to quantify environmental and health benefits, but may use relevant data generated during the SEP's implementation.

8.  Following receipt of each SEP Completion Report, EPA will do one of the following:

(a)  provide written notice that it accepts the SEP Completion Report;

(b)  reject the SEP Completion Report and provide written notice to Exelon Mystic of any deficiencies, and grant Exelon Mystic an additional thirty (30) days, or such other time as EPA may in its sole and unreviewable discretion conclude is reasonable, in which to correct any deficiencies; or

(c)  reject the SEP Completion Report and provide written notice to Exelon Mystic of its failure to satisfactorily complete the SEP in accordance with the requirements of this Decree, and seek stipulated penalties as specified below.

Exelon Mystic may invoke the procedures set forth in Section X above to dispute EPA's determination the SEP was not satisfactorily completed in accordance with the requirements of this Decree.

9.  Stipulated Penalties.  If Exelon Mystic should fail to perform or satisfactorily complete any of the SEPs, the following stipulated penalties shall apply:

(a)  Except as provided in Paragraphs 4 and 5 above, if Exelon Mystic fails to satisfactorily complete any of the SEPs, Exelon Mystic shall be liable for stipulated penalties as follows: for the School Bus Retrofit SEP, $3,254,496; for the Commuter Rail Retrofit SEP, $1,256,289; for the Dam Bikepath SEP, $250,000; for the Mill Creek SEP, $250,000; and for the Malden River Study SEP, $118,600.

- 29 -

(b)  If Exelon Mystic fails to either (i) spend all of the funds designated to be spent on a SEP's implementation by a specified expenditure date or (ii) deposit, by that same date, the unspent funds in an interest-bearing escrow account acceptable to EPA, Exelon Mystic shall be liable for stipulated penalties for each day of each such failure in accordance with Paragraph 18 of Section VIII above.

(c)  If Exelon Mystic fails to meet any of a SEP's "critical milestones" by the deadlines set out in the Appendices below, Exelon Mystic shall be liable for stipulated penalties for each day of each such failure in accordance with Paragraph 18 of Section VIII above.

(d)  If Exelon Mystic fails to timely submit any of its Interim SEPs Reports or SEP Completion Reports, Exelon Mystic shall be liable for stipulated penalties for each day of each such failure in accordance with Paragraph 18 of Section VIII above.

The penalties described above shall be the sole stipulated penalties applicable to Exelon Mystic's performance and completion of the SEPs.  Separate stipulated penalties under this Paragraph may accrue simultaneously for each separate type of violation described above.  Stipulated penalties arising under this Paragraph shall be paid in accordance with the terms of Section VIII above.

10.    By entering into this Consent Decree, Exelon Mystic certifies that it is not required to develop or perform the SEPs by any federal, state, or local law or regulation; nor is Exelon Mystic required to perform or develop the SEPs as part of an existing settlement or order in another legal action, or as injunctive relief in this or any other judicial or administrative case or action. Exelon Mystic further certifies that it has not received, and is not presently negotiating to receive, credit in any other enforcement action for the SEPs.

11.    Exelon Mystic hereby agrees that any public oral or written statement making reference to the SEPs shall include the following language: "This project was undertaken as part of the settlement of an federal enforcement action taken by the U.S. Environmental Protection Agency for alleged violations of the Clean Air Act."

- 30 -

12.    Exelon Mystic agrees to indemnify, save and hold harmless the United States, its officials, agents, contractors, subcontractors, employees and representatives, from any and all claims or causes of action:

(a)   arising from, or on account of, acts or omissions of Exelon Mystic, Exelon Mystic's officers, directors, employees, agents, contractors, subcontractors, receivers, trustees, successors or assigns, relating to the SEPs; and

(b)   for damages or reimbursement arising from, or on account of, any contract, agreement, or arrangement between Exelon Mystic and any persons or entities for performance of work on or relating to the SEPs.

13.    Until the termination of this Decree, Exelon Mystic shall maintain legible copies of documentation of the underlying research and data for any and all documents or reports submitted to EPA regarding any of the SEPs, and Exelon Mystic shall provide the documentation of any such underlying research and data to EPA within seven (7) days of a request for such information.

14.    For all certifications that Exelon Mystic is required to make under this Appendix and Paragraph 44 of this Consent Decree relating to the performance and completion of the SEPs, Exelon Mystic may place reasonable reliance on the accuracy of reports or other information provided to it by state or local authorities, or entities under contract with Exelon Mystic or such authorities to implement the SEPs.

- 31 -

## APPENDIX II – SCHOOL BUS RETROFIT SEP

1.   The School Bus Retrofit SEP will equip currently operating diesel school buses in the Boston metropolitan area with particulate matter filters and supply the buses with ultra-low sulfur diesel fuel ("ULSD"), i.e., diesel fuel with a sulfur content of less than 30 parts per million ("ppm"), and 15 ppm or less if available, in order to reduce particulate matter and other harmful air pollutants from diesel bus engine exhaust.  Unless otherwise provided pursuant to Appendix I, Exelon Mystic shall spend to implement this SEP a total of $3,254,496 to retrofit and supply ULSD to as many diesel school buses as possible.  To supply the ULSD, Exelon Mystic shall pay any increased cost differential between the retrofitted buses' current diesel fuel and ULSD.  The SEP shall be completed by June 2006, or at another time mutually agreed upon by Exelon Mystic and EPA.

2.   The School Bus Retrofit SEP shall be implemented in the Boston metropolitan area.  In order to provide the greatest long-term benefits under this retrofit program, the SEP shall also give preference for retrofitting buses which by law are operated solely in the Boston metropolitan area, rather than buses that can be leased or otherwise moved outside the Boston area.  The retrofits shall be performed using only demonstrated retrofit technologies and equipment; in no event shall SEP funds be used for research and/or investigation of new or undemonstrated retrofit technologies and/or applications.

3.   Work Schedule.  The SEP shall be performed on the following schedule:

(a)  By March 15, 2004, or within ten (10) days of final entry of this Consent Decree, whichever is later, Exelon Mystic shall provide written notice to EPA which (i) states the school district in which the SEP will be implemented; (ii) identifies the school buses and related child-transport vehicles (together, "buses") to be retrofitted under the SEP; (iii) identifies the bus yard(s) where these buses are garaged and fueled; (iv) provides a schedule for the contracting, purchase and supply of ULSD to these bus yards; and (v) provides a schedule for the contracting and purchase of the retrofit particulate

- 32 -

traps, and for the installation of the traps on the buses in accordance with Paragraph 3(c) below.

(b) By no later than June 1, 2004, ULSD shall be purchased and initially supplied to the bus yard(s) identified in Paragraph 3(a) above. The amount of ULSD supplied shall be sufficient to fuel all of the buses operating from the bus yard(s), including any buses and related child-transport vehicles that will not be retrofitted with particulate traps. SEP funds shall pay the increased cost differential between the price of ULSD and the price of the buses and related vehicles' current diesel fuel, and may also pay any necessary increased delivery costs. ULSD shall continue to be purchased and supplied to these bus yard(s) during the entire 2004-05 and 2005-06 school years, through June 30, 2006. Nothing in this Paragraph shall obligate Exelon Mystic to make payments for ULSD prior to June 1, 2004.

(c) By no later than August 31, 2004, the retrofitting of the buses identified in Paragraph 3(a) shall commence. The retrofits shall be performed as quickly as possible on a schedule that is most protective of affected sensitive populations, e.g., the bus-riding children and the residents of environmental justice neighborhoods through which the buses travel. Nothing in this Paragraph shall obligate Exelon Mystic to make payments for the traps prior to June 1, 2004.

(d) By no later than August 31, 2005, the retrofitting of all of the buses identified in Paragraph 3(a) shall be completed.

4.    Expenditure Schedule. Unless otherwise provided pursuant to Appendix I, Exelon Mystic shall expend, by no later than June 1, 2004, a total of $3,048,998 to implement this SEP. By no later than June 1, 2005, Exelon Mystic shall expend an additional $205,498 on this SEP. These expenditures shall be made in accordance with Paragraph 3 of Appendix I above.

5.   <u>Critical Milestones</u>.  The following are critical milestones for this SEP:

(a)  By no later than June 1, 2004, ULSD shall be purchased and initially supplied to the bus yard(s) identified in Paragraph 3(a) above; and

(b)  By no later than August 31, 2005, all of the buses identified to be retrofitted in Paragraph 3(a) above shall be retrofitted with particulate traps.

- 34 -

## APPENDIX III – COMMUTER RAIL RETROFIT SEP

1.    The Commuter Rail Retrofit SEP will equip commuter rail trains operating out of Boston's North Station rail terminal with oxidation catalysts and supply the trains with low-sulfur diesel fuel. The Commuter Rail Retrofit SEP is designed to reduce particulate matter and other harmful air pollutants in the greater Boston metropolitan area from diesel locomotive exhaust. Unless otherwise provided pursuant to Appendix I, Exelon Mystic shall spend to implement this SEP a total of $1,256,289 to retrofit and supply low-sulfur fuel for as many commuter locomotives operating out of North Station as possible. The SEP shall be completed by June 1, 2007, or at another time mutually agreed upon by Exelon Mystic and EPA.

2.    Based on current estimates regarding retrofitting and fuel costs, the Parties expect that this SEP will retrofit approximately 22 commuter rail locomotives operating out of North Station – specifically, the approximately 15 locomotives that operate exclusively from North Station, and approximately 7 locomotives that "swing" between North Station and South Station. The SEP will also supply low-sulfur diesel fuel, i.e., diesel fuel with a sulfur content of no more than 500 ppm, by paying the cost differential between these locomotives' current non-road diesel fuel and low-sulfur diesel fuel, at North Station from June 2004 to June 2007. On June 1, 2007, the use of low-sulfur diesel fuel in locomotives is expected to become mandatory under EPA's recently proposed off-road diesel fuel rule ("Off-Road Fuel Rule").

3.    Due to the innovative nature of this project, the Parties recognize that, despite Exelon Mystic's best efforts, it is possible that the proposed oxidation catalysts may not function as intended using the proposed low-sulfur fuel. If substantial technical problems with the catalysts should arise that prevent the completion of the SEP within its budget and schedules, Exelon Mystic shall proceed in accordance with Paragraph 4 of Appendix I above, except that, if the June 1, 2007 deadline for the locomotives' mandatory switch to low-sulfur diesel fuel set out in the proposed Off-Road Fuel Rule is delayed, Exelon Mystic and the MBTA may decide, with EPA's approval, to apply any unexpended retrofit funds to the continued supply of low-sulfur

- 35 -

diesel fuel for the commuter locomotives. Nothing in this Paragraph shall obligate Exelon Mystic to spend more than the unexpended retrofit funds in order to continue the low-sulfur fuel supply, and in no event shall Exelon Mystic continue such supply past the date that the locomotives' use of low-sulfur diesel fuel becomes mandatory under the final Off-Road Fuel Rule or any other federal or state regulation.

4.    Work Schedule. The SEP shall be performed on the following schedule:

(a)  By no later than July 1, 2004, low-sulfur fuel shall be purchased and initially supplied to the North Station rail terminal. The amount of low-sulfur fuel supplied shall be sufficient to fuel all of the commuter rail locomotives operating from North Station (total fuel estimate, approximately 4,415,255 gallons/year) and shall continue to be supplied from July 1, 2004 to at least June 1, 2007. SEP funds will pay for the cost differential between the price of low-sulfur diesel fuel and the price of the locomotives' current off-road diesel fuel. Nothing in this Paragraph shall obligate Exelon Mystic to spend more than $220,763 per year (or more than $662,289 over three years) to supply low-sulfur diesel fuel, or to make payments for such fuel prior to June 1, 2004.

(b)  By no later than August 31, 2005, the commuter rail locomotives identified in Paragraph 2 above shall be retrofitted with oxidation catalysts. Nothing in this Paragraph shall obligate Exelon Mystic to spend more than $594,000 on the retrofits, or to make payments for the retrofits prior to June 1, 2004.

5.    Expenditure Schedule. Unless otherwise provided pursuant to Appendix I, Exelon Mystic shall expend, by no later than June 1, 2004, a total of $814,763 to implement this SEP. By no later than June 1, 2005, Exelon Mystic shall likewise expend an additional $220,763 on this SEP, and by no later than June 1, 2006, Exelon Mystic shall likewise expend another $220,763. These expenditures shall be made in accordance with Paragraph 3 of Appendix I above.

- 36 -

6.  <u>Critical Milestones</u>.  The following are critical milestones for this SEP:

(a)  By no later than July 1, 2004, low-sulfur diesel fuel shall be purchased and initially supplied to the North Station rail terminal; and

(b)  By no later than August 31, 2005, all of the commuter rail locomotives identified in Paragraph 2 above shall be retrofitted with oxidation catalysts.

## APPENDIX IV – DAM BIKEPATH SEP

1.   The Dam Bikepath SEP will create a bikepath link across the Mystic River at the Amelia Earhart Dam, thereby encouraging bike traffic on the Boston metropolitan area's existing and planned bikepaths and reducing air pollutants from automobile exhaust. Unless otherwise provided pursuant to Appendix I, Exelon Mystic shall spend to implement this SEP a total of $250,000 to design and construct a commuter bikepath crossing the Amelia Earhart Dam, and to help design and construct a commuter bike path on land adjacent to the MBTA's Charlestown bus yard or at other metropolitan locations. The SEP shall be completed as quickly as practicable but by no later than June 1, 2006, or at another time mutually agreed upon by Exelon Mystic and EPA.

2.   Based on current estimates regarding design and construction costs, the Parties expect that most of the SEP's funds will be needed to design and construct the Amelia Earhart Dam bikepath, with some funds (budget target, at least $25,000) available to help design and construct as much of the Charlestown bus yard bikepath as possible. Should these estimates prove high, or for any other reason funds remain available after the two bikepaths are constructed, the SEP may fund additional design and/or construction of bikepaths with current or planned connections to the Amelia Earhart Dam and Charlestown bikepaths.

3.   Work Schedule. The SEP shall be performed on the following schedule:

(a)  By no later than June 1, 2004, any necessary design work for the two bikepaths identified above shall commence.

(b)  By no later than June 1, 2005, any necessary design work for the Amelia Earhart Dam bikepath shall be completed.

(c)  By no later than June 1, 2006, construction on the Amelia Earhart Dam bikepath shall be completed, and the bikepath shall be opened to the public.

4.    <u>Expenditure Schedule</u>.  Unless otherwise provided pursuant to Appendix I, Exelon Mystic shall expend, by no later than June 1, 2004, a total of $250,000 to implement this SEP. These expenditures shall be made in accordance with Paragraph 3 of Appendix I above.

5.    <u>Critical Milestones</u>.  The following are critical milestones for this SEP:

(a)  By no later than June 1, 2004, any necessary design work for the two bikepaths shall be commenced.

(b)  By no later than June 1, 2006, construction on the Amelia Earhart Dam bikepath shall be completed, and the bikepath shall be opened to the public.

## APPENDIX V – MILL CREEK SEP

1.    The Mill Creek SEP will restore and protect a saltmarsh ecosystem along the Mill Creek in Chelsea, Massachusetts.  The specific site to be restored will be adjacent to the Parkway Plaza site in Chelsea or at another downstream location on Mill Creek.  The SEP will restore and protect this site as a natural saltmarsh and upland ecosystem, providing environmental benefits and wildlife habitat as well as needed coastal access, passive recreation and environmental opportunities to the residents of Chelsea and surrounding communities, including many persons living in environmental justice neighborhoods.  Unless otherwise provided pursuant to Appendix I, Exelon Mystic shall spend to implement this SEP a total of $250,000 on identification, permitting and restoration of as much of the site as possible, with concurrent and follow-up oversight and educational activities.

2.    Based on current estimates regarding design and construction costs, the Parties expect that approximately 80% of this SEP's funding will be directed toward site identification, permitting, restoration work, and pre-and post-restoration monitoring, while approximately 20% will be used for coordination of the project, educational components, and public access through boardwalks or other similar means.  The approximate SEP budget targets are as follows: $38,000 for site delineation, assessment and permitting; $150,000 for restoration work (site preparation, earthwork, planting, etc.); $12,000 for pre- and post-restoration monitoring; $10,000 for public access through boardwalks or similar means, with educational signage; and $40,000 ($10,000 per year for four years) for project coordination and special educational events.

3.    <u>Work Schedule</u>.  The SEP shall be performed on the following schedule:

(a)   Year 1 (June 2004 to June 2005).  Any necessary site delineation and/or assessment activities shall be performed, and any necessary permits shall be applied for.

(b)   Year 2 (June 2005 to June 2006).  All necessary permits shall be obtained, and restoration work shall commence.

(c)    Year 3 (June 2006 to June 2007).    Restoration and public access work shall be completed, and post-restoration monitoring shall commence.

(d)    Year 4 (June 2007 to June 2008).   Post-restoration monitoring shall continue. In addition, coordination, oversight and educational activities related to the project shall be performed during each of these four years.

4.    Expenditure Schedule.  Unless otherwise provided pursuant to Appendix I, Exelon Mystic shall expend, in accordance with Paragraph 3 of Appendix I above, a total of $250,000 to implement this SEP.  Specific expenditures shall be made as follows: by no later than June 1, 2004, Exelon Mystic shall expend $51,000; by June 1, 2005, an additional $173,000; by June 1, 2006, an additional $13,000; and by June 1, 2007, an additional $13,000.

5.    Critical Milestones.  The following are critical milestones for this SEP:

(a)    By no later than the end of Year 1, all necessary permits shall be applied for.

(b)    By no later than the end of Year 3, all restoration and public access work shall be completed.

## APPENDIX VI – MALDEN RIVER STUDY SEP

1.    The Malden River Study SEP will fund a feasibility study and environmental assessment ("Study") for the Malden River.  The Study's goal is to determine feasible restoration activities that will restore the Malden River ecosystem, including the potential replication of lost wetland habitat and the identification of areas that will or may potentially support productive wetland vegetation and/or restoration of degraded wetland habitat.  Unless otherwise provided pursuant to Appendix I, Exelon Mystic shall spend to implement this SEP a total of $118,600 to fund the Study, and to purchase certain water monitoring equipment.  The Study shall build on preliminary data collection and other work being performed in a study overseen by the Army Corps of Engineers and the Mystic Valley Development Commission.  The SEP shall be completed as quickly as practicable, but by no later than December 2005.

2.    <u>Work Schedule</u>.  The SEP shall be performed on the following schedule:

   (a)  By no later than June 1, 2004, the contract for performing the Study shall be awarded.

   (b)  By no later than December 1, 2004, the Study tasks shall be completed.

   (c)  By no later than June 1, 2005, a draft Study report shall be produced.

   (d)  By no later than December 1, 2005, the final Study report shall be produced.

3.    <u>Expenditure Schedule</u>.  By February 1, 2004, or within ten (10) days of final entry of this Consent Decree, whichever is later, Exelon Mystic shall spend in accordance with Paragraph 3 of Appendix I a total of $118,600 to implement this SEP.  Specifically, Exelon Mystic shall spend approximately $118,300 to fund the Study, and the remainder to purchase certain water monitoring equipment to be deployed in the Malden River.

4.    <u>Critical Milestones</u>.  The following is the critical milestone for this SEP:  By no later than December 1, 2005, the final report for the Study shall be produced.