UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FILED
N CLERKS OFFIC

2004 JAN 29 P 3: ι8

04  10213 PBS

. D
DISTRICT OF MASS

|  |  |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) |
|  | ) |
| v. | ) Civil Action No. |
|  | ) |
| EXELON MYSTIC, LLC, | ) |
|  | ) |
| Defendant. | ) |

COPY

CONSENT DECREE

TABLE OF CONTENTS

I.      BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

II.     JURISDICTION AND VENUE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

III.    APPLICABILITY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

IV.     DEFINITIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

V.      CIVIL PENALTY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

VI.     COMPLIANCE REQUIREMENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

VII.    SUPPLEMENTAL ENVIRONMENTAL PROJECTS . . . . . . . . . . . . . . . . . . . . . . . . 9

VIII.   STIPULATED PENALTIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

IX.     FORCE MAJEURE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

X.      DISPUTE RESOLUTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

XI.     EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS . . . . . . . . . . . . . . . . . . 16

XII.    COSTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

XIII.   NOTICES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

XIV.    EFFECTIVE AND TERMINATION DATES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

XV.     MODIFICATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

XVI.    PUBLIC PARTICIPATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

XVII.   SIGNATORIES/SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

XVIII.  INTEGRATION/APPENDICES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

XIX.    FINAL JUDGMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

XX.     APPENDICES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

**WHEREAS,** Plaintiff, the United States of America ("United States"), on behalf of the Administrator of the United States Environmental Protection Agency ("EPA"), has filed contemporaneously with the lodging of this Consent Decree a Complaint in this action against Defendant, Exelon Mystic, LLC ("Exelon Mystic"), alleging that Exelon Mystic committed various violations of the Clean Air Act ("CAA"), 42 U.S.C. § 7401 et seq., at the Mystic Station power plant, a utility owned and operated by Exelon Mystic in Everett, Massachusetts;

**WHEREAS,** the United States and Exelon Mystic (together, "the Parties") without the necessity of trial regarding any issue of fact or law, and without any admission of liability by Exelon Mystic, consent to entry of this Consent Decree;

**WHEREAS,** the Parties agree, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith and will avoid litigation between the Parties, and that this Consent Decree is fair, reasonable, and in the public interest; and,

**THEREFORE, IT IS ADJUDGED, ORDERED AND DECREED AS FOLLOWS:**

**I. BACKGROUND**

1.     Exelon Mystic is a Delaware limited liability company doing business in Massachusetts. At all relevant times, Exelon Mystic or its predecessor, Sithe Mystic LLC, has owned and operated the Mystic Station power plant ("Mystic Station") in Everett, Massachusetts. At all relevant times, Mystic Station has included four electricity-generating units, known as Units 4, 5, 6 and 7, each with its own associated smokestack, from which Defendant has emitted pollutants, including visible air pollutants.

2.    The Complaint alleges that Exelon Mystic violated the CAA, federal CAA regulations, and the Massachusetts State Implementation Plan ("SIP") at Mystic Station on at least 6,000 occasions from June 1998 through November 2003 by exceeding the plant's opacity limits. Opacity is a measure of smoke thickness: 0% opacity is a completely clear plume; 100% opacity is a completely black (or other color) plume that blocks out all light behind it. Opacity is regulated to prevent visible air pollutants, such as soot and other particulate matter, from polluting the air. Under the CAA and the Massachusetts SIP, Exelon Mystic is prohibited from causing visible smoke emissions from Mystic Station with 20% opacity or greater for more than six minutes per hour, and 40% opacity or greater at any time. The Complaint further alleges that Exelon Mystic violated monitoring, record-keeping and reporting requirements associated with its opacity limits. Finally, the Complaint alleges violation of EPA's Compliance Order issued to Defendant on March 4, 2002.

3.    EPA, pursuant to Section 113(a)(1) of the CAA, 42 U.S.C. § 7413(a)(1), issued a Notice of Violation to Exelon Mystic's predecessor, Sithe Mystic LLC, on June 1, 2001 regarding the Massachusetts SIP opacity violations, and related opacity monitoring and reporting violations, alleged in the Complaint. The United States Department of Justice ("DOJ" or "Department of Justice"), pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b), has notified the Massachusetts Department of Environmental Protection ("MA DEP") of the commencement of this action.

## II. JURISDICTION AND VENUE

4.    This Court has jurisdiction over the subject matter of this action and the Parties hereto pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b), and 28 U.S.C. §§ 1331,

1345 and 1355.  Venue properly lies in this Court pursuant to 42 U.S.C. § 7413(b), 28 U.S.C. §§

1391(b) and (c), and 28 U.S.C. § 1395.

     5.     The Complaint states claims that constitute grounds for which relief could be

granted pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b).  Exelon Mystic waives any

objections it may have to jurisdiction and venue regarding this action.

     6.     Until this Consent Decree is terminated, the Court shall retain jurisdiction over the

Parties and this Consent Decree in order to enforce its terms and to take any other action

necessary or appropriate to effectuate it.  Exelon Mystic shall not challenge the Court's

jurisdiction to enforce or otherwise effectuate this Consent Decree.

### III.  APPLICABILITY

     7.     The provisions of this Consent Decree shall apply to and be binding upon the

United States, and upon Exelon Mystic, its officers, directors, employees, agents, successors and

assigns.  Any transfer of ownership or operation of Mystic Station Units 4, 5, 6 or 7 to any other

person must be conditioned upon the transferee's agreement to undertake the obligations required

by this Decree, as provided in a written agreement between Defendant and the proposed

transferee, enforceable by the United States as third-party beneficiary of such agreement.  At

least thirty (30) days prior to such transfer, Defendant shall provide a copy of this Consent

Decree to the proposed transferee and shall simultaneously provide written notice of the

prospective transfer, together with a copy of the proposed written agreement, to the Department

of Justice and EPA as provided in Section XIII (Notices) below.  Any attempt to transfer

ownership or operation of Mystic Station Units 4, 5, 6 or 7 without complying with this

Paragraph constitutes a violation of this Decree.  No change in ownership, operation, or legal

status of Exelon Mystic, or transfer of ownership or operation of Mystic Station Units 4, 5, 6 or

7, shall release Exelon Mystic from its continued performance of all of its obligations under this

Decree, including the obligations to perform the supplemental environmental projects set out in

Section VII and in Appendices I through VI below.

8.      Notwithstanding the provisions of Paragraph 7 above, Exelon Mystic may be

released from some or all of its obligations solely under Section VI ("Compliance

Requirements") provided that (i) Exelon Mystic and the transferee petition the United States in

writing for approval of the transfer of the obligations and liabilities from Exelon Mystic to the

transferee; (ii) the transferee's written agreement with Exelon Mystic specifically agrees to

assume the obligations and liabilities of this Consent Decree; (iii) the transferee has the financial

and technical ability to assume the obligations and liabilities provided by the Decree; and (iv) the

United States, in its sole and unreviewable discretion, approves the transfer of the obligations and

liability provided by the Decree.

9.      Defendant shall provide a copy of this Consent Decree to all officers, directors,

employees, and agents whose duties might reasonably include compliance with any provision of

this Decree, as well as to any entities with whom Defendant contracts or otherwise agrees to

perform work related to Section VII of the Decree, except that Defendant need not provide copies

of this Decree to any entities who are retained solely to supply materials or equipment to satisfy

requirements under the Decree.  Defendant shall condition any such contract or agreement upon

performance of the work in conformity with the terms of this Consent Decree.

10.     In any action to enforce this Consent Decree, Defendant shall not raise as a defense the failure by any of its officers, directors, employees, agents, or contractors to take any actions necessary to comply with the provisions of this Consent Decree.

## IV.  DEFINITIONS

11.     Terms used in this Consent Decree that are defined in the CAA or in regulations promulgated pursuant to the CAA shall have the meanings assigned to them in the CAA or such regulations, unless otherwise provided in this Decree.  Whenever the terms set forth below are used in this Consent Decree, the following definitions shall apply:

(a)     "Complaint" shall mean the complaint filed by the United States in this action;

(b)     "Consent Decree" or "Decree" shall mean this Decree and all appendices attached hereto;

(c)     "Day" shall mean a calendar day unless expressly stated to be a working day.  In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or federal holiday, the period shall run until the close of business of the next working day;

(d)     "Defendant" shall mean Exelon Mystic, LLC;

(e)     "EPA" shall mean the United States Environmental Protection Agency and any successor departments or agencies of the United States;

(f)     "Paragraph" shall mean a portion of this  Decree identified by an Arabic numeral;

(g)     "Parties" shall mean the United States and the Defendant;

(h)    "Section" shall mean a portion of this Decree identified by a Roman numeral; and

(i)    "United States" shall mean the United States of America, acting on behalf of EPA.

## V.  CIVIL PENALTY

12.    Exelon Mystic shall pay to the United States a civil penalty of $1,000,000 within thirty (30) days after the date of entry of this Consent Decree.

13.    Exelon Mystic shall pay the above-described civil penalty by electronic funds transfer in accordance with the written instructions to be provided by the United States.  The cost of such electronic funds transfer shall be Exelon Mystic's responsibility.  Within three (3) business days of payment, Exelon Mystic shall provide written notice of payment via facsimile and mail to EPA, Department of Justice, and the United States Attorney for the District of Massachusetts, pursuant to Section XIII (Notices) below.  The written notice shall also contain a statement showing the calculation of any interest included in the payment.

14.    If Exelon Mystic makes a late payment of any amount of the penalty, Exelon Mystic shall pay interest from the date upon which payment is required by Paragraph 12 on any late payment, a quarterly nonpayment penalty, and any governmental enforcement expenses incurred to collect the late payment, all in accordance with Section 113(d)(5) of the CAA, 42 U.S.C. § 7413(d)(5).

15.    Exelon Mystic agrees to treat all payments made pursuant to this Section as civil penalties within the meaning of Section 162(f) of the Internal Revenue Code, 26 U.S.C. § 162(f),

and further agrees not to use these payments in any way as, or in furtherance of, a tax deduction for Exelon Mystic, or any of its corporate affiliates, under federal, state or local law.

## VI.  COMPLIANCE REQUIREMENTS

16.    Exelon Mystic shall comply at all times at Mystic Station Units 4, 5, 6 and 7 with the opacity limits, and associated opacity monitoring, recordkeeping and reporting requirements, arising from Sections 110 and 412 of the CAA, 42 U.S.C. §§ 7410 and 7651k, and the Massachusetts SIP, and set out in 40 C.F.R. Part 51, Appendix P, 40 C.F.R. Part 60, Appendix B, Performance Specification 1, 40 C.F.R. Part 75, and the SIP-approved versions of 310 Code of Massachusetts Regulations 7.06 and 7.14.

## VII.  SUPPLEMENTAL ENVIRONMENTAL PROJECTS

17.    Exelon Mystic shall perform and satisfactorily complete five supplemental environmental projects ("SEPs").  Each of these SEPs will be performed in the Boston metropolitan area, and each is intended to reduce any adverse impact or risk to public health or the environment to which Mystic Station's opacity violations may have contributed.  Exelon Mystic shall perform these SEPs in accordance with the terms and schedules set out in Appendices I through VI to this Consent Decree.  These Appendices are incorporated in this Consent Decree and are fully enforceable therein.

## VIII.  STIPULATED PENALTIES

18.    Except as otherwise provided in this Section and in Appendix I, if Exelon Mystic violates any provision of this Consent Decree, Exelon Mystic shall be liable for stipulated penalties as follows:

- 9 -

| Period of Failure To Comply | Penalty Per Violation Per Day |
|---|---|
| 1st through 15th day | $ 500 |
| 16th through 30th day | $ 1,000 |
| 31st day and beyond | $ 2,500 |

19.    Except as otherwise provided in Paragraph 8 above, if Exelon Mystic violates the opacity limits set out in the Massachusetts SIP at Mystic Station Unit 4, 5, 6 or 7 during any calender month, Exelon Mystic shall be liable for stipulated penalties for that calendar month as follows:

| Period of Violation | Penalty Per Minute Of Violation(s) at Each Unit |
|---|---|
| 1st through 5th minute | $ 250 |
| 6th through 10th minute | $ 500 |
| 11th minute and beyond | $ 1,000 |

These stipulated penalties replace, for the above-described opacity violations only, the general stipulated penalties set out in Paragraph 18. Nothing in this Paragraph or Section shall limit in any way the rights of the United States and EPA to seek judicial or administrative penalties and injunctive remedies regarding any opacity violations that occur at Mystic Station Units 4, 5, 6 or 7 after the date of lodging of this Consent Decree.

20.    Stipulated penalties arising under Paragraph 18 shall begin to accrue on the day that the violation of this Consent Decree first occurs, and shall continue to accrue for each day until the day upon which the violation is fully corrected. Stipulated penalties arising under Paragraph 19 shall begin to accrue at the minute when the opacity violation first occurs, and shall continue to accrue for each minute until the violation is fully corrected. Separate stipulated penalties shall accrue simultaneously for separate violations of this Consent Decree or of opacity

- 10 -

limits. Stipulated penalties shall accrue regardless of whether the United States has notified

Exelon Mystic that a violation of this Consent Decree or opacity limits has occurred.

21.     Stipulated penalties shall become due and owing, and shall be paid by Exelon

Mystic, not later than thirty (30) days after the United States issues Exelon Mystic a written

demand for them. If any such demanded stipulated penalties are not paid in full when due,

Exelon Mystic shall pay the unpaid penalties and interest thereon. Such interest shall accrue

from the date the penalties were due, and shall be calculated in accordance with

28 U.S.C. § 1961.

22.     The United States, in an unreviewable exercise of its discretion, may reduce or

waive stipulated penalties otherwise due it under this Consent Decree.

23.     Exelon Mystic shall pay the full amount of any stipulated penalties due (including

all accrued interest) by electronic funds transfer in accordance with the written instructions to be

provided by the United States, or by certified check payable to the "U.S. Department of Justice,"

referencing DOJ No. 90-5-2-1-07948 and the United States Attorney's Office file number

_____, and delivered by overnight or certified mail to the Office of the United States

Attorney for the District of Massachusetts. Exelon Mystic shall bear the cost of such transfer. At

the time of payment, Defendant shall simultaneously send written notice of payment and a copy

of any transmittal documentation (which should reference DOJ No. 90-5-2-1-07948 and the civil

action number of this case) to the Department of Justice, EPA, and the United States Attorney for

the District of Massachusetts, as provided in Section XIII (Notices) below. The written notice

shall also contain a statement showing the calculation of any interest included in the payment.

24.    Exelon Mystic agrees to treat all payments made pursuant to this Section as civil penalties within the meaning of Section 162(f) of the Internal Revenue Code, 26 U.S.C. § 162(f), and further agrees not to use these payments in any way as, or in furtherance of, a tax deduction for Exelon Mystic, or any of its corporate affiliates, under federal, state or local law.

25.    Stipulated penalties shall continue to accrue as provided in Paragraph 20 above during any dispute resolution, with interest on accrued penalties payable and calculated at the rate established by the Secretary of the Treasury, pursuant to 28 U.S.C. § 1961, but need not be paid until the following:

(a)    If the dispute is resolved by agreement or by a decision of EPA that is not appealed to the Court, Defendant shall pay accrued penalties determined to be owing, together with interest, to the United States within thirty (30) days of the effective date of the agreement or the receipt of EPA's decision or order;

(b)    If the dispute is appealed to the Court and the United States prevails in whole or in part, Defendant shall pay all accrued penalties determined by the Court to be owing, together with interest, within sixty (60) days of receiving the Court's decision or order, except as provided in Subparagraph (c), below;

(c)    If any party appeals the District Court's decision, Defendant shall pay all accrued penalties determined to be owing, together with interest, within fifteen (15) days of receiving the final appellate court decision.

26.    If the United States must bring an action to collect any portion of the civil penalty or any stipulated penalties that Exelon Mystic is required to pay pursuant to this Consent Decree, Exelon Mystic shall reimburse the United States for all interest, enforcement expenses (including

but not limited to costs and attorneys fees), and additional penalties related to such collection action, in accordance with Section 113(d)(5) of the CAA, 42 U.S.C. § 7413(d)(5).

27.    The stipulated penalty provisions of this Section shall be in addition to all other rights reserved by the United States pursuant to Section XI below.  Nothing in this Stipulated Penalties Section shall be construed as prohibiting, altering, or in any way limiting the ability of the United States to seek other remedies or sanctions available by virtue of any violation by Exelon Mystic of this Consent Decree or of the statutes, regulations or permits referenced within it.

### IX.  FORCE MAJEURE

28.    A "force majeure event" is any event beyond the control of Defendant, its contractors and/or agents, or any entity controlled by Defendant, that delays or prevents the performance of any obligation under this Consent Decree despite Defendant's best efforts to fulfill the obligation.  "Best efforts" includes anticipating any potential force majeure event and addressing the effects of any such event (a) as it is occurring, and (b) after it has occurred, to prevent or minimize any resulting delay or failure to perform to the greatest extent possible. "Force majeure" does not include Defendant's financial inability to perform any obligation under this Consent Decree.

29.    Defendant shall provide written notice to EPA as soon as possible, but not later than seven (7) days after the time Defendant first knew of, or by the exercise of due diligence, should have known of, a claimed force majeure event.  The notice shall describe the expected delay or failure to perform; the causes of the delay or failure to perform; Defendant's past and proposed actions to prevent or minimize any delay or failure to perform; a schedule for carrying

out those actions; and Defendant's rationale for attributing any delay or failure to perform to a force majeure event. Failure to provide notice as required by this Paragraph shall preclude Defendant from asserting any claim of force majeure.

30.    If the United States agrees that a force majeure event has occurred, the United States and Defendant may agree in writing to extend the time for Defendant to perform the obligation for the time necessary to complete it. Stipulated penalties shall not accrue with respect to such obligation during the extension provided by the United States for performance. An extension of time to perform the obligation affected by a force majeure event shall not, by itself, extend the time to perform any other obligation under this Consent Decree.

31.    If the United States does not agree that a force majeure event has occurred, or does not agree to the extension of time sought by Defendant, then the United States' position shall be binding, unless Defendant invokes dispute resolution under Section X below. In any such dispute, Defendant bears the burden of proving, by a preponderance of the evidence, that each claimed force majeure event is a force majeure event as defined in this Section; that Defendant gave the notice required by Paragraph 29; that the force majeure event caused any delay or failure to perform that Defendant claims was attributable to that event; and that Defendant exercised best efforts to prevent or minimize any delay caused by the event.

## X.  DISPUTE RESOLUTION

32.    Any dispute that arises under or with respect to this Consent Decree shall first be the subject of informal negotiations. Defendant shall provide written notice to EPA describing the nature of the dispute and requesting informal negotiations to resolve it. Defendant's notice shall also include any supporting factual data, analysis, opinion, or documentation to support its

position in the dispute. The period of informal negotiations shall not exceed twenty (20) days beyond the date that EPA receives Defendant's written notice, and in no event shall extend more than thirty (30) days beyond the date on which the dispute arose, unless EPA and Defendant agree in writing to a longer period. EPA and Defendant may agree to mediation of the dispute during the informal negotiations period.

33.    If EPA and Defendant cannot resolve a dispute by informal negotiations, EPA will issue a written decision regarding the dispute and this decision shall be considered binding unless Defendant files with this Court, and simultaneously serves upon the Department of Justice and EPA, a motion for review of the EPA decision within thirty (30) days after the issuance of EPA's written decision. Defendant's motion shall contain all supporting factual data, analysis, opinion, and documentation upon which Defendant relies, and shall describe the history of the matter in dispute and the relief requested. Defendant's motion to the Court may not raise new issues or submit new facts that were not presented to EPA during the thirty (30) day informal negotiations period. The United States may file a response to any issues raised in the Defendant's motion within sixty (60) days following service of Defendant's motion. In any judicial proceeding pursuant to this Paragraph, Defendant shall bear the burden of demonstrating that its position clearly complies with this Consent Decree and the CAA and that Defendant is entitled to relief under applicable law. The United States reserves the right to argue that its position is reviewable only on the administrative record and must be upheld unless arbitrary and capricious or otherwise not in accordance with law.

34.    The invocation of dispute resolution procedures under this Section shall not extend, postpone, or affect in any way any obligation of Defendant under this Consent Decree

which is not directly in dispute, unless the United States or the Court agrees otherwise. Stipulated penalties with respect to the disputed matter shall continue to accrue from the first day of noncompliance, but payment shall be stayed pending resolution of the dispute. In the event that Defendant does not prevail on the disputed issue, stipulated penalties shall be assessed and paid as provided in Section VIII above.

## XI.  EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS

35.     This Consent Decree resolves the civil claims of the United States for the violations alleged in the Complaint filed in this action, and any additional opacity violations committed by Exelon Mystic at Mystic Station Units 4, 5, 6 and 7, through the date of lodging of the Decree.

36.     Except as expressly provided in this Section, this Consent Decree shall not be construed to prevent or limit the rights of the United States to obtain penalties or injunctive relief under the Act or implementing regulations, or under other federal or state laws, regulations, or permit conditions. This Consent Decree in no way releases Exelon Mystic or any other party from any criminal liability that may arise from any facts, circumstances or law involved in any way in this or any civil judicial action.

37.     Defendant is responsible for achieving and maintaining complete compliance with the Clean Air Act and its implementing regulations, including any CAA permits that Defendant holds from EPA or MA DEP, and Defendant's compliance with this Consent Decree shall be no defense to any action commenced pursuant to said laws, regulations, or permits. This Consent Decree is not a permit, or a modification of any permit, under any federal, state, or local laws or regulations. The United States does not, by its consent to the entry of this Consent Decree,

- 16 -

warrant or aver in any manner that Defendant's compliance with any aspect of this Consent Decree will result in compliance with provisions of the Act, 42 U.S.C. § 7401 et seq.

38.    This Consent Decree does not limit or affect the rights of Defendant or of the United States against any third parties not party to the Decree, nor does it limit the rights of third parties not party to the Decree against Defendant, except as otherwise provided by law.

39.    This Consent Decree shall not be construed to create rights in, or grant any cause of action to, any third party not party to the Decree.

40.    Except as expressly provided in this Consent Decree, the United States reserves all legal and equitable remedies available to enforce the provisions of the Decree.

## XII.  COSTS

41.    Except as described in Sections V (Civil Penalties) and VIII (Stipulated Penalties), each party shall bear its own costs, disbursements and attorney's fees in this action, and specifically waives any right to recover such costs, disbursements or attorneys fees from the other party pursuant to the Equal Access to Justice Act, 5 U.S.C. § 504, or other applicable law.

## XIII.  NOTICES

42.    Whenever under the terms of this Consent Decree written notice is required to be given or written information is required to be sent to EPA, the Department of Justice, the United States Attorney for the District of Massachusetts, or Exelon Mystic, the notice or information shall be mailed via overnight or certified mail to the individuals and addresses specified below, unless any such individual or such individual's successor gives notice in writing to the other party that notice should be mailed to a different individual or to a different address, or unless this Consent Decree specifically provides otherwise.

As to the Department of Justice:

> Chief
> Environmental Enforcement Section
> Environment and Natural Resources Division
> U.S. Department of Justice
> P.O. Box 7611
> Washington, D.C. 20044
> DOJ No. 90-5-2-1-07948
> Attn: Elise S. Feldman

As to EPA:

> Director
> Office of Environmental Stewardship
> U. S. Environmental Protection Agency
> Suite 1100 (Mailcode SAA)
> One Congress Street
> Boston, Massachusetts  02114-2023
> Attn: Steven J. Viggiani

As to Exelon Mystic:

> Mark A. Schiavoni
> Vice President
> Exelon Mystic, LLC
> The Schrafft Center
> 529 Main Street, Suite 605
> Charlestown, Massachusetts 02129

> and

> John P. Proctor
> Winston & Strawn LLP
> 1400 L Street, NW
> Washington, D.C. 20005

As to the United States Attorney, District of Massachusetts:

       George Bunker Henderson, II
       Assistant United States Attorney
       U.S. Courthouse, Suite 9200
       1 Courthouse Way
       Boston, Massachusetts 02210

43.    Whenever written notice is required to be sent by facsimile transmission, the notice should be sent to the entities or individuals set out in Paragraph 42 above, using the following facsimile telephone numbers: for the Department of Justice, (202) 616-2427; for EPA, (617) 918-1809; for Exelon Mystic, (617) 381-2211 (Schiavoni) and (202) 371-5950 (Proctor), and for the United States Attorney for the District of Massachusetts, (617) 748-3969. These numbers are furnished for the convenience of the Parties; it remains the responsibility of any party sending a facsimile to ensure that the relevant facsimile number is correct, and that the facsimile was fully transmitted and received.

44.    All notices, reports and other written submissions required by this Consent Decree to be sent by Exelon Mystic to EPA and/or the Department of Justice (including but not limited to the SEP certification of completions required by Appendix I below) shall contain the following certification:

    I certify that the information contained in or accompanying this submission is true, accurate and complete. As to any marked and identified portions of the submission for which I cannot personally verify truth and accuracy, I certify, as the company official having supervisory responsibility for the person(s) who verified those portions, that the information contained therein is true, accurate and complete.

45.    Exelon Mystic shall ensure that such certified statement is signed by a responsible corporate officer, i.e., a president, vice-president, secretary, treasurer, or other person responsible for a principal business function, or a senior manager responsible for environmental policy-making and decision-making.

46.    Any party may, by written notice to the other Parties, change its designated notice recipient or notice address provided above.

47.    Notices submitted pursuant to this Section shall be deemed submitted upon mailing, unless otherwise provided in this Consent Decree or by mutual agreement of the Parties in writing.

## XIV.  EFFECTIVE AND TERMINATION DATES

48.    This Consent Decree shall be effective upon the date of its entry by the Court.

49.    After Defendant has maintained compliance with this Consent Decree for a period of five (5) years after the effective date of the Decree, has complied with all other requirements of the Decree, including those relating to the SEPs pursuant to Section VII above, and has paid the civil penalty and any accrued stipulated penalties as required by the Decree, Defendant may serve upon the United States a request for termination, stating that Defendant has satisfied all of the above requirements, together with all necessary supporting documentation.

50.    Following receipt by the United States of Defendant's request for termination, the Parties shall confer informally concerning the request and any disagreement that the Parties may have as to whether Defendant has satisfactorily complied with the requirements for termination of this Consent Decree.  If the United States agrees that the Decree may be terminated, the Parties shall submit, for the Court's approval, a joint stipulation terminating the Decree.

51.    If the United States does not agree that the Decree may be terminated, Defendant may invoke dispute resolution under Section X above.  However, Defendant shall not seek such dispute resolution until sixty (60) days after service of its request for termination.

## XV.  MODIFICATION

52.    Any material modification of this Consent Decree must be agreed to by the Parties, set out in writing, and approved by the Court.  Material modifications shall become effective upon approval by the Court.

53.    Any non-material modifications of this Consent Decree must be agreed to by the Parties and set out in writing.

## XVI.  PUBLIC PARTICIPATION

54.    The Consent Decree is lodged with the Court subject to the requirements of 28 C.F.R. § 50.7, which provides for publication of a notice of this proposed Consent Decree in the Federal Register and an opportunity for the public to comment.  The public has thirty (30) days from the date of publication in the Federal Register to comment on the settlement.  All written comments received, along with any responses to them, shall be provided to the Court prior to entry.  The United States reserves the right to withdraw or withhold its consent to entry if the comments regarding the Consent Decree disclose facts or considerations which indicate that the Consent Decree is inappropriate, improper or inadequate.  Exelon Mystic consents to the entry of this Consent Decree without further notice,  proceedings or consent.

## XVII.  SIGNATORIES/SERVICE

55.    Each party certifies that at least one of their undersigned representatives is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind such party to this document.

56.    This Consent Decree may be signed in counterparts, and its validity shall not be challenged on that basis.

57.    Defendant agrees not to oppose entry of this Consent Decree by the Court or to challenge any provision of the Decree, unless the United States has notified Defendant in writing that it no longer supports entry of the Decree.

58.    Defendant agrees to accept service of process by mail with respect to all matters arising under or relating to this Consent Decree and to waive the formal service requirements set forth in Rule 4 of the Federal Rules of Civil Procedure and any applicable local rules of this Court including, but not limited to, service of a summons.

## XVIII.  INTEGRATION/APPENDICES

59.    This Consent Decree and its Appendices constitute the final, complete, and exclusive agreement and understanding among the Parties with respect to the settlement embodied in the Decree and supersede all prior agreements and understandings, whether oral or written, concerning the settlement embodied herein.  Other than the Appendices, which are attached to and incorporated in this Decree, and any documents that are subsequently submitted and approved pursuant to this Decree, no other document, nor any representation, inducement, agreement, understanding, or promise, constitutes any part of this Decree or the settlement it represents, nor shall it be used in construing the terms of this Decree.

## XIX.  FINAL JUDGMENT

60.    Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment of the Court as to the United States and Defendant.

## XX.  APPENDICES

61.    The following appendices are attached to and incorporated into this Consent Decree:

"Appendix I" is the General Provisions for Mystic SEPs

"Appendix II" is the School Bus Retrofit SEP;

"Appendix III" is the Commuter Rail Retrofit SEP;

"Appendix IV" is the Dam Bikepath SEP;

"Appendix V" is the Mill Creek SEP; and

"Appendix VI" is the Malden River Study SEP.


JUDGMENT IS HEREBY ENTERED IN ACCORDANCE WITH THE FOREGOING CONSENT DECREE THIS 24 DAY OF March, 2004.


UNITED STATES DISTRICT JUDGE

4/27/04
nunc pro tunc

- 22 -